ZERINGUE
*v.*
WILLIAMS.

---

## PETER MARCY et al. *v.* W. A. CHAMBERS.

Where the masters of two boats agree to go to the assistance of a ship that is grounded, for the purpose of getting her off, and to share the profits of the expedition equally between them, but before they reach her discover that she is afloat, and one of them turns back and the other pursuing her course, accidentally discovers passengers belonging to the distressed vessel and affords them relief—*Held :* That the adventure terminated when the first boat turned back ; and that her demand for the division of salvage in this case should be rejected.

APPEAL from the Fourth District Court of New Orleans, *Price, J.*
    *Thomas Gilmore*, for plaintiff and appellant. *W. H. Hunt* and *Budd & Lambert*, for defendant.

MERRICK, C. J. This suit was brought to settle the partnership affairs resulting from the joint ownership and employment of the steamboat St. Charles, from July, 1854, to October, 1855.

The judgment of the lower court is satisfactory to both parties, except as to a single item, viz, the one-half of $2,250 allowed the defendant as the owner of the steamboat Streck, for salvage during the period above mentioned.

It seems that the steamboat St. Charles held in partnership, and defendant's boat Streck, were employed at the Balize as steam towboats, in opposition to the Consolidated Association.

. The defendant, as captain of the Streck, received a letter, in December, 1854,

MARCY
*v.*
CHAMBERS.

addressed generally to the captain of any steamboat on the bar, stating that the ship Saxon was aground on the Gozier Island, having on board 400 passengers, and a part of a cargo, and requesting two or three steamers to come to her assistance to get the ship off, if possible.

The defendant communicated with the captain of the St. Charles, and the two boats went in search of the ship Saxon. The St. Charles being a faster boat than the Streck, maneuvered for the purpose of deceiving the Anglo American, and other boats belonging to the Consolidated Association, as to their destination.

In going out, they passed the ship Saxon at the bar, without recognizing her, she having got off without assistance. Not finding the ship, the St. Charles and the Anglo American, which was following them, returned. The Streck pursued the enterprise further, went to the Grand Gozier, but not finding the ship, went to the north end of the Chandeleur Islands, made inquiries, engaged some one to pilot them, returned to the Grand Gozier, where they arrived at 7 o'clock at night. Observing a light on shore, they sent a boat and discovered a large number of passengers on the island. These, with great risk and exposure to the crew and steamboat, (there being a heavy swell,) they brought off during the night. The steamboat struck several times, and was obliged to go into dock for repairs. The Streck, in a suit against the Saxon, was allowed $2,250 as salvage.

The plaintiffs contend that there was an agreement that the two boats, St. Charles and the Streck, should share equally in the gains of the adventure. The District Judge was of the opinion, however, that the contract, which was over $500, was not proved by one witness and corroborating circumstances, but he allowed the plaintiffs $200 for the St. Charles, on a *quantum meruit*. The *defendant* does not complain of the judgment.

It seems the object of the services rendered by the St. Charles, if we are to believe plaintiffs' witness, was to prevent the ship in distress, from receiving assistance from any other quarter, and particularly from the swift boats of the other company, until the Streck, an inferior boat, could reach the ship. Whether this kind of contract can be enforced in a court of justice or not, it is not necessary to decide, for the case is with the defendant on another ground.

The adventure in which the parties were engaged, was to pull off the ship Saxon. When the Saxon was afloat, and no longer needed the assistance of the steamboats, and the St. Charles had abandoned the enterprize and returned, the adventure (conceding it proven) terminated. The St. Charles incurred no risk, her crew performed no part of the labor, and having abandoned the enterprize, she was doubtless pursuing her own interests elsewhere.

Had a claim been made upon her to share the loss occasioned the Streck, by the laboring and striking in the swell, which compelled her to go into dock, it would have been repudiated.

If it be conceded, therefore, that there was an agreement to act in concert in getting *the ship* off, it cannot be extended to the accidental discovery of the passengers on the island, who were brought off in boats, with much risk and great exposure of the officers and crew, after the St. Charles had abandoned the adventure.

Judgment affirmed.